Jared A. Jacobson, Esq.
Jared Jacobson Law, LLC
PA Attorney ID: 201382
223 Poplar Ave., Unit B
Devon, PA 19333
T: (215) 215-9991 / (917) 856-6167
E: jjacobson@jaredjacobsonlaw.com
*Attorney for Plaintiff, Carmela Ciotti-Hooper*

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARMELA CIOTTI-HOOPER** | : | |
| | : | |
| Plaintiff, | : | **No.** |
| v. | : | |
| | : | |
| **JENKINTOWN PSYCHIC** | | |
| **VISIONS, LLC,** | : | |
| **GINA MARKS a/k/a NAOMI** | | |
| **NICKLAS, a/k/a Eyeofaquarius22,** | : | |
| **STEVEN NICKLAS** | : | |
| **a/k/a STEFAN** | : | |
| **NICKLAS a/k/a STEPHEN** | : | |
| **NICKLAS, VICTOR MILLER** | : | |
| **a/k/a VINNIE MILLER** | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | **CIVIL COMPLAINT** |
| | : | |
| | : | **JURY TRIAL DEMANDED** |

## PRELIMINARY STATEMENT

This is a civil action by Plaintiff Carmela Ciotti-Hooper ("Plaintiff"), by and through her undersigned counsel, Plaintiff hereby alleges the following against Defendants Jenkintown Psychic Visions LLC ("Psychic Visions"), Gina Marks a/k/a Naomi Nicklas a/k/a Eyeofaquarius22 ("Naomi"), Steven Nicklas a/k/a Stephen Nicklas a/k/a Stefan

Nicklas ("Steve"), and Victor Miller a/k/a Vinnie Miller ("Victor" or "Vinnie"), (collectively, "Defendants"):

## I.    JURISDICTION & VENUE

1.    This civil controversy arises under among others, the laws of the United States, and jurisdiction is conferred upon this District Court in the Eastern District of Pennsylvania, pursuant to *28 U.S.C. §1331.*

2.    The Court has supplemental jurisdiction over Plaintiff's pendent state law claims pursuant to *28 U.S.C. § 1367(a).*

3.    This Court is an appropriate venue for this cause of action pursuant to *28 U.S.C. 1391(b)(1) and (b)(2).*

4.    Venue is proper in the Eastern District of Pennsylvania because the Defendants operated out of this District and substantial events and transactions giving rise to the claims occurred in this Eastern District of Pennsylvania.

5.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, and there is complete diversity of citizenship between Plaintiff and all Defendants.

## II.    PARTIES

6.    Plaintiff Carmela Ciotti-Hooper is an individual and resident of Ontario, Canada.

7.    Defendant Jenkintown Psychic Visions LLC is a Pennsylvania limited liability company with a registered agent at 1729 West Tilghman Street Rear, Allentown, PA 18109.

8.    Defendant Gina Marks, a/k/a Naomi Nicklas and @Eyeofaquarius22 (social media handle on TikTok, among others) is believed to reside and operate from Jenkintown,

Pennsylvania, specifically 475 Old York Road, Jenkintown, PA 19046, among others including 612 Schuyer Avenue North Arlington, NJ 07031 and upon information and belief, was an owner, operator, and/or agent of Jenkintown Psychic Visions LLC.

9.    Defendant Steven Nicklas, a/k/a Stefan Nicklas, is believed to be associated with Naomi Nicklas and acted as an owner or operator of Jenkintown Psychic Visions LLC, using the same address as noted above.

10.    Defendant Victor Miller a/k/a Vinnie Miller @VinnieMiller302 also participated in the alleged scheme to defraud Plaintiff and is believed to be associated with the enterprise.

## III.    PROCEDURAL HISTORY

11.    On or about January 14, 2025, Plaintiff's former attorney sent a legal correspondence outlining the allegations to Defendants.

12.    Prior to filing this Complaint, the undersigned sent a Final Notice to Defendants via email to psychicvisions22@gmail.com on April 29, 2025, an email address on which Plaintiff and Defendants previously and regularly communicated, in addition to Defendants Steve Nicklas @jenkintownpsychic and Vinnie Miller @VinnieMiller302 (both of which were used by Defendants, respectively, for PayPal payments and communications regarding the subject of the allegations).

13.     The undersigned received neither a response nor any "bounced email" or any other notice indicating that the Final Notice was not received by Defendants.

## IV.    STATEMENT OF FACTS

14.    Beginning around December 2023, Plaintiff met Defendant Naomi "online" where Plaintiff communicated with Defendant Naomi regarding a love interest "J" (hereinafter referred to as J or "J"), which Defendant Naomi assured Plaintiff that she could use her

psychic powers to get J to increase his communication and interests in Plaintiff as they are soulmates/ twin flames.

15.    Defendant Naomi communicated to Plaintiff that while J loved Plaintiff, there was someone else (offering physical descriptions of their physical body) keeping J away from Plaintiff, not wanting J to have anyone else.[1]

16.    Throughout the conversations referenced above, Defendant Naomi would "coach" Plaintiff as to what Plaintiff should say to J and how to respond to him, as they had not been directly communicating and Plaintiff and J had not been around each other physically very frequently.

17.    Defendant Naomi would regularly instruct Plaintiff to recite affirmations concerning getting the man she desired and that nothing would stop her from doing so.

18.    On or about December 26, 2024, Defendant Naomi instructed Plaintiff to purchase two white pillowcases, two black pillowcases, six magnets, 24 red roses and 24 white roses to perform a "ritual".

19.    Defendant Naomi stated that Plaintiff was cursed as a child and that besides the goal of reconnecting with J, a portion of the ritual was to break the curse that Defendant Naomi stated Plaintiff  had on her.

20.    The ritual Defendant Naomi required Plaintiff to perform was communicated to Plaintiff as follows: "***Okay, the first thing I want you to do is I want you to take three magnets. Put one right in the middle of your forehead. Put one in the middle of your***

---

[1] Plaintiff believed that Defendant Naomi's descriptions matched J's ex-wife, further manipulating Plaintiff into trusting Defendant Naomi, given that Plaintiff had never communicated such details to Defendant Naomi.

*chest or your boobs separate. Put one right in between your navel and your hairline. Lay down for 25 minutes. Put the timer on. After the 25 minutes, text me. All I want you to do is visualize him calling you and telling you he misses you and he wants to come and see you.*" Throughout the first few months of Plaintiff's relationship with Defendant Naomi, Defendant Naomi instructed Plaintiff to place the magnets on her body in connection with the performance of several rituals.

21.    Defendant Naomi also stated to Plaintiff "*What I want you to do now is while you have your pillowcase on, you go lay down and keep telling the spirit guides to come forward to unleash the message once and for all: What needs to be done to get rid of this evil does bad luck so we can be free immediately. Three times.*"

22.    Defendant Naomi would constantly tell Plaintiff over and over that J's family were only around him because of his money, and they didn't want anyone else to have it, especially his ex-wife.

23.    Defendant Naomi further instructed Plaintiff to write down all of J's kids' names, his ex-wife's name, put them in a mixture of vinegar and lemon and write down '*whatever plans you have to stay in his life will be soured. Whatever plans you have to control him and keep him from me will be soured, t*ake a separate piece of paper and write the ex-wife's name and put on it '*whatever plans you have to stay in his life are soured.*' If you need help, text me and I will explain more.

24.    After instructing Plaintiff to perform the ritual above, Defendant Naomi further instructed Plaintiff to take ALL notes Plaintiff wrote, sign, date and send them to Defendant Naomi, upon information and belief, with the intention and for the purpose of demonstrating that Plaintiff agreed to perform such rituals and had not been coerced.

25.    Defendant Naomi continued asking Plaintiff for more and more money throughout the process, informing Plaintiff that the money was always because "*the spirit guides requested the monies to fight the evil and the ex-wife who was working with psychics in Florida while on vacation, as giving these psychics money would 'break the communication'*" between J & Plaintiff.  Defendant Naomi informed Plaintiff that the ex-wife was told by a psychic that J was in love and would marry this woman [Plaintiff] which made the ex-wife very upset.

26.    At one point, Defendant Naomi insisted that Plaintiff send Defendant Naomi potentially compromising pictures, that were to be sent to J once the Defendant chose which ones to send.  Plaintiff subsequently expressed her apprehension, having done so after referencing a poor website/social media review. Any time Plaintiff renewed her increasing concerns to Defendant Naomi, Defendant Naomi would either blow Plaintiff off or refuse Plaintiff's request to delete or return the pictures.

27.    Defendant Naomi regularly encouraged Plaintiff to have sexual relations with J to "seal our fate" and that Defendant Naomi would return all of Plaintiff's money to her upon it happening, which never happened.

28.    Plaintiff was induced to make significant payments to Defendants under the false belief that the funds were required to protect J from harm and negative spiritual forces.

29.    These representations were repeatedly made by Defendants during calls, emails, and messages across state and international lines.

30.    Defendants continued demanding funds under threat that harm would befall J if Plaintiff failed to comply.

31.   Plaintiff made at least eight wire payments from Canada to bank accounts in Pennsylvania, specifically to Navy Federal Credit Union accounts controlled by the Defendants.

32.   These wire transfers were made from TD Canada Trust and Scotiabank between December 2023 and April 2024.

33.   The total amount wired by Plaintiff exceeds $400,000 USD.

34.   Evidence of financial transactions performed through international bank transfers demonstrate wire transactions including, among others: (a) $15,000 USD / $20,286.50 Canadian ("CDN") on December 27, 2023, (b) $5,000 USD / $6,829.50 CDN on December 28, 2023, (c) $25,000 USD / $33,785 CDN on January 8, 2024, (d) $50,000 USD on February 17, 2024, (e) $50,000 USD / $69,925 CDN on March 19, 2024, (f) $55,000 USD / $75,807 CDN on March 20, 2024, (g) $72,850 USD / $142,857.14 CDN on March 27, 2024, and (h) $60,000 USD / $127,554 CDN on April 29, 2024, as well as other transfers documented in Plaintiff's records. A significant amount of the withdrawals and payments noted above included funds Plaintiff withdrew from her retirement portfolio and was also required to pay a tax in the amount of 30% before exchange.

35.   Plaintiff was also induced to order and ship luxury goods such as handbags, at the direction of Defendants, as evidenced by Amazon and Fashionphile receipts, to be delivered to Defendants New Jersey addressed (referenced above).

36.   Many transfers were noted as needed "*to protect against evil spirits, remove curses, or ensure health and safety*" of Plaintiff, J and her loved ones.

37.   Defendants regularly held themselves out as possessing supernatural powers and

expertise.

38.   At least one online review submitted by a separate individual raises similar concerns about Defendants, clearly demonstrating a pattern and practice of illegal and manipulative behavior.

39.   Plaintiff's emotional and financial distress escalated due to fear-based coercion and spiritual manipulation which was on-going between Defendants and Plaintiff during the relevant time period.

40.   Payments were made using bank wires, PayPal, credit lines, and other mechanisms including Plaintiff's retirement withdrawals and life savings.

41.   Multiple payments were described by Defendants in their own words as ***"investments in spiritual safety,"*** and required liquidation of Plaintiff's TFSA and personal assets to ***"keep her safe"***, with the opposite also stated as a threat to induce Plaintiff to continuing sending Defendants additional money and designer goods ordered by Plaintiff and shipped directly to Defendants.

42.   Defendant Naomi would regularly "coach" Plaintiff regarding what specifically to say to J, how to respond to him, as well as to send compromising photos of Plaintiff in lingerie to J with the purpose of enticing J to contact Plaintiff and/or have further physical contact with J.

43.   Defendant Naomi would regularly require Plaintiff to write her dreams down and communicate them to her in order to subsequently manipulate Plaintiff through the use of said private communications.

44.   On or about December 31, 2023, Defendant Naomi required Plaintiff to purchase a

bouquet of mixed flowers and all of Plaintiff's "favorite sweets" in order to perform a ritual, stating that 2024 would be Plaintiff's "sweetest year".

45.    Defendant Naomi regularly reminded Plaintiff that "*we are in a spiritual battle, and that this negative energy will use anything to try to bring down your vibration. Don't let it.*"

46.    On or about January 1, 2024, Defendant Naomi required Plaintiff to perform another one of several rituals, including Jell-O, with the further requirement that Plaintiff perform the ritual, write it down, and send a picture to Defendant Naomi signed and dated for the purpose of subsequently manipulating Plaintiff through such communications.

47.    On or about early January 2024, Defendant Naomi demanded that Plaintiff send her $45,000 to "do the work that needed to be done on J, his ex-wife, and his daughter," allocating $15,000 to each person, further noting that Plaintiff would receive the $45,000 back when J came to Plaintiff's home and Plaintiff engaged in intimate/sexual relations with him, continuing to state that the money was a "tool" and that Plaintiff would have "effortless power in the end" if she complied with Defendant Naomi's instructions.

48.    Defendant Naomi would consistently tell Plaintiff that she was "listening to the spirit guides", and "they would tell her what we needed", further advising Plaintiff that she should "go into meditations and be there by the altar" for hours before Plaintiff would hear from Defendant Naomi.

49.    Defendant Naomi would regularly tell Plaintiff that the spirit guides would request, Money, Jewelry, Flowers and Rituals, and that Plaintiff should wear credit cards in her pocket, specifically on the left side, while continually doing rituals and all while working

and living her life.

50.   Defendant Naomi would constantly engage in contentious conversations with Plaintiff for the purpose of coercing Plaintiff to send the required funds immediately, further coaching Plaintiff as to what Plaintiff should specifically say and do prior to entering the bank, stating, "*this is your money, not theirs, and you can do whatever you want with it.*"

51.   Defendants would further threaten Plaintiff that *"if the money is not there today, we're going to have problems, and that's not your fault. I understand, but I cannot guarantee anything. If the money is not there today, it's going to cause a lot of problems. There won't be enough power for me to fight against what is surrounding you and him. I definitely won't be able to separate him from the children, and I won't be able to create a sexual connection. Sexual connection is very, very important. He's going to start getting out of the house more, and there's going to be other females around. I do not want his root chakra to connect with anyone else's but yours."*

52.   When Plaintiff attempted to discontinue the battery of rituals and excessive financial payments demanded of Plaintiff by Defendant Naomi, Defendant Naomi advised, "*Do whatever you want, I'm not forcing you. You are going to lose him, don't blame me. Learn to be happy by yourself. Then you shouldn't even want a man in your life, has been so corroded and now you want to bring somebody in. The last man you had died on you. What life with your friends are they going to substitute his penis? You're really upsetting me.*"

53.   Defendant Naomi would constantly talk to the Plaintiff about the "ascension process".

54.    On or about February 14, 2024, upon Plaintiff advising Defendant Naomi of losing her dog, Defendant Naomi would represent to Plaintiff, "***I will help you find her. Don't worry, she is safe***" further having Plaintiff consistently perform manifestation and affirmations to help find Plaintiff's dog.

55.    Defendant Naomi required Plaintiff to pay *ransom* in order to "set J free and break the curse". While the demanded ransom amount was $105,000, Plaintiff was only able to pay $100,000 CDN, exchanged to $72,850.00 USD which made Defendant Naomi extremely unhappy, subsequently continuing to use the shortfall as a further means of coercing Plaintiff into finding more and more funds to satisfy the balance noting that "*When the spirit guides do not get what they say we need then the work cannot be completed*", which was upsetting to Plaintiff as she could not imagine where she would find more funds.

56.    When Plaintiff had challenges sending money to Defendants, Defendant Naomi would tell Plaintiff, "***Isn't it your money? You can do what you want to do, or does it belong to somebody else besides you? Does it belong to the bank? Does it belong to the government? No, it belongs to you. You do whatever you want to do. Well, I need to finish the work, don't bother me with this right now. You're going to ruin my vibrational frequency. I need to focus.***"

57.    Defendant Naomi would require Plaintiff to watch the first Matrix movie and listen to various frequencies, in order for Plaintiff to get onto another timeline that is different from the one everyone else is on, and that Plaintiff and J would be together in that other timeline, doing amazing things in the world stating that, "***I'm getting messages now you're going to have to listen to a high-frequency sound for two hours to prepare you***

*for the timeline shift."*

58.   Defendant Naomi would require Plaintiff to engage in various rituals, including: wearing a watch backwards on her arm with the back facing out, Plaintiff would be unable to look at any clocks on the wall, in her home, or on her cell phone, further stating, ***"This is a new existence. This isn't your old life continued. This is a new universe for you. Time is going so fast, and the feelings you had from the old reality have gone. We have timelines emerging - the natural and artificial parallel and multiverse. You can feel it. What's happening is that you are strengthening, believe it or not. Your muscles are getting stronger. It's got a lot to do with your femur bone and also your root chakra. This is why he has to be brought up to speed. The other day, I rewound it. To meet him now, I have to see if you are where he is on the plane. Does this make sense to you? Once I see that you have both caught up in a spiritual sense, I can fast forward you to where you need to be put together. Oh yes, listen to me. You already got this. You are more than halfway through. We are just making sure that there will be no problems in the future and we are removing whatever blockages there is to keep you and him from not being on the same timeline. This is how it works. I'll explain soon. Please forgive my crazy schedule, but it has to be like this for many reasons.***"

59.   Defendant Naomi used various forms of isolation from friends, family, and loved ones further advising Plaintiff "you cannot tell J, he won't understand, not until this is all over.  You will thank me in the end when you know what I know about his family. "I was right all along." Defendant Naomi also used the media, advising Plaintiff not to watch TV, stating ***"I don't want you to put the news on anymore. Don't watch that straight programming, it's at its best, at its finest. Do not watch that anymore, especially not***

*what we are doing this work that will bring your vibrational frequency down completely.*

*Okay, I want you to take a plain white sheet of paper with a black pen. Write his name,*

*your name, I want you to write 'peace, love, health, happiness, joy' and sign it and date*

*it. Fold it up small and shove it in the Jell-O.*

60.    Defendant Naomi would require Plaintiff to take pictures of any gold Plaintiff had
in her possession, place them all on a white towel on her bed and send Defendant Naomi
the pictures. Plaintiff needed some money and took some old pieces to a jeweler who gave
her some of the money that she needed.   When the Plaintiff told Defendant Naomi,
Defendant Naomi was very upset and wanted Plaintiff to tell her how much cash she got
and exactly which pieces she sold, to which Plaintiff responded that they were "old
pieces" she would not wear.

61.    On or about March 2024, when Plaintiff advised Defendant Naomi that she was
essentially running out of money, Defendant Naomi began claiming that she was seeing
a 'demonic figure' when she would go into meditation.

62.    Defendant Naomi advised Plaintiff that in order to break a particularly strong spell,
Defendant Naomi needed to go to Florida to meet her associate "Victor" to dig up and
clean out the plot in a cemetery and dispose of the items in a burial site. In response to
Defendants' request, Plaintiff sent $2,000 to Defendant Victor who Defendants claimed
would be used to pay two guards to allow Defendants Victor and Naomi to enter the
cemetery and do their rituals.

63.    Defendant Naomi advised Plaintiff that April 8, 2024, was an extremely important
date and advised Plaintiff that in order to be successful, "*I'm going to need all the help*
*you can give me—spiritually, mentally, emotionally, financially. This is the biggest*

*week we've ever had. High vibration is key. You must keep your vibration frequency very high."*

64.    On occasion, when Plaintiff wanted to go outside, defendant Naomi would prevent her from doing so using scare tactics, stating, ***"I need to know your whereabouts right now because they are trying to cause you harm. Remember that you can go, but I don't want you out that long. But I do understand you need to get out of the house, you need fresh air. Okay, go. When you come back, text me. I will need you by then. I'm running late because I'm waiting for FedEx now for the candles that I need. Also, if anyone offers you anything for free, like a free sample of food in the market or to shake your hand, do not do any of that today. It's very important you do not exchange energy with anyone because I am placing your energy with his [J]."***

65.    On or about April 2024, Defendant Naomi began asking for expensive jewelry and purses. The jewelry was for Plaintiff to wear after Defendant Naomi cleansed it, and the purses were for carrying the artifacts to Florida needed to do the work at the cemetery.

66.    On one occasion, Defendant Naomi messaged Plaintiff, "***I'm sending you a PayPal send of $2000. This is from bot Vic. I need him to do some rituals on more communication. We need to pump up the volume on the communication. It's a number for PayPal 530-407-6400 Vinnie Miller.***

67.    On or about June 2024, after Defendant Naomi and Defendant Victor did the so-called "digging up of the grave site", Plaintiff requested the return of one-half of the money she had sent. In response, Defendant Naomi stated that Plaintiff's request was making her angry as well as making Defendant Victor angry.

68.    In or about early June 2024, as communications between Plaintiff and J were slowing down, Defendant advised that Plaintiff must send a text to J (knowing it would terribly upset J), stating that "*we need to move him and make him realize he could lose you*", which Plaintiff in fact sent, upsetting (as expected) and causing J to cease all communications with Plaintiff, resulting in Plaintiff becoming physically ill, after which, Plaintiff demanded her money back from Defendant Naomi.

69.    Plaintiff communicated to Defendant Naomi that she was going on vacation, the whole situation was making her so upset that she may need to go back on her medication, to which Defendant Naomi responded providing medical advice, "***You don't need medication. You just need to get control, relax. He's not little woman and he's not gone and he's not dead.***"

70.    When Plaintiff communicated to Defendant Naomi that she wanted 50% of Plaintiff's money and certain other items returned that were purchased, including four Chanel bags, Defendant Naomi stated: "***When they start attacking you again and beating the shit out of you, you're going to wish to God that you did not send a message like this or even say what you said earlier. You don't know what you're playing with. This work is not over. You are forfeiting. There will be penalties. You need to open your eyes. You need to think about the reality, not the false reality that they created for you. You need to think about what happened the day you want to meet him, the last day you want to meet him, and you were very ill. You need to think about that day long and hard. You're not understanding. He couldn't love you the way you need him to under their programming. There was a program created for him. You need to go watch the Matrix again, but you're too fucking stubborn.***"

71.   Plaintiff thanked Defendant Naomi for all she did and said, "Let fate take its course", to which Defendant Naomi responded, "***This is your problem. This is what you always do. You always forfeit every lifetime. This is all you've ever done. You went back on your promise. You can't even complete a task, and you think you're the biggest, smartest, greatest person in the world. Oh honey, no, not me, but you will be open for all types of attacks, not just one or two, but several. You are causing me and my team great harm. You're putting us in harm's way by your behavior. Quickly, you're going back to be plugged in.***"

72.   Plaintiff communicated to Defendant Naomi, "What are you going to do to hurt me?" repeating that Plaintiff also told her friend and her brother, to which Defendant Naomi threatened Plaintiff, "***And you see now, you've even caused bigger problems. So you know what? I don't even want to communicate with you anymore after this. You've told a friend, you've told your brother, why would you do something like this? Now I'm going to tell people, would you like me to contact everyone and show them your naked pictures? Because now I feel violated. So I think you should be violated***".

73.   Plaintiff has no meaningful recourse unless this Court intervenes to redress the fraudulent conduct and economic harm.

74.   Defendants remain active and, upon information and belief, continue to operate under false pretenses to solicit payments from vulnerable individuals.

75.   Plaintiff also shipped luxury goods including handbags and gift cards at the demand Defendants, as evidenced by Amazon and Fashionphile receipts.

76.   Despite demands by Plaintiff, Plaintiff's former attorney and the undersigned, Defendants have refused to return Plaintiff's funds, prompting this action.

77.   Upon information and belief, Defendants have committed identical crimes and civil legal violations, as described herein, using the same pattern and practice of criminal behavior, as further detailed in Criminal Complaint, Docket No.: MJ-38102-CR-66-2025.

## V.   CLAIMS

### COUNT I
### (Wire Fraud – 18 U.S.C. § 1343 – Against All Defendants)

78.   All of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

79.   Defendants knowingly devised and executed a scheme to defraud Plaintiff through materially false representations with the intent to obtain money and property by means of false or fraudulent pretenses.

80.   Defendants used wire transmissions—including bank wires, PayPal transactions, and interstate email communications—to perpetrate the scheme.

81.   Each transaction identified above constitutes a separate predicate act of wire fraud in violation of 18 U.S.C. § 1343.

82.   As a direct and proximate result of Defendants' actions, Plaintiff suffered monetary loss *exceeding* $400,000 USD.

WHEREFORE, Plaintiff demands judgment against Defendants for all available and appropriate relief and remedies under the law.

### COUNT II
### (Extortion – 18 U.S.C. § 875(d) – Against All Defendants)

83.   All of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

84.   Defendants transmitted communications in interstate commerce containing threats

to harm Plaintiff's loved ones if Plaintiff did not pay large sums of money.

85.    These threats were made with the intent to extort money from Plaintiff.

86.    Defendants' conduct constitutes a violation of 18 U.S.C. § 875(d).

87.    Plaintiff suffered substantial financial and emotional harm as a result of the extortion.

WHEREFORE, Plaintiff demands judgment against Defendants for all available and appropriate relief and remedies under the law.

## COUNT III
### (Civil RICO – 18 U.S.C. § 1962(c) – Against All Defendants)

88.    All of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

89.    Defendants constituted an association-in-fact enterprise engaged in interstate commerce.

90.    Defendants conducted or participated in the conduct of the enterprise's affairs through a pattern of racketeering activity, including wire fraud and extortion.

91.    The predicate acts of racketeering occurred over at least six months, involved multiple methods of payment and coercion, and were related and continuous.

92.    Plaintiff is a person injured in her business or property by reason of Defendants' violation of 18 U.S.C. § 1962(c).

WHEREFORE, Plaintiff demands judgment against Defendants for all available and appropriate relief and remedies under the law.

## COUNT IV
### (Fraudulent Misrepresentation – Pennsylvania Common Law - Against All Defendants)

93.   All of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

94.   Defendants intentionally misrepresented material facts about their psychic powers and the need for payment to ward off evil spirits.

95.   Plaintiff justifiably relied on these misrepresentations and suffered damages as a result.

96.   Defendants acted with actual malice or reckless indifference.

WHEREFORE, Plaintiff demands judgment against Defendants for all available and appropriate relief and remedies under the law.

## COUNT V
### (Conversion – Pennsylvania Common Law - Against All Defendants)

97.   All of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

98.   Plaintiff had a legal right to possess the funds and goods she transferred.

99.   Defendants wrongfully exercised control and dominion over Plaintiff's property.

100.  Plaintiff is entitled to return of the value of the property converted.

WHEREFORE, Plaintiff demands judgment against Defendants for all available and appropriate relief and remedies under the law.

**COUNT VI**
**(Intentional Infliction of Emotional Distress – Pennsylvania Common Law - Against All Defendants)**

101. All of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

102. Defendants' conduct was extreme, outrageous, and beyond all bounds of decency.

103. Plaintiff suffered severe emotional distress as a direct result of Defendants' threats and coercion.

   WHEREFORE, Plaintiff demands judgment against Defendants for all available and appropriate relief and remedies under the law.

**COUNT VII**
**(Unjust Enrichment – Pennsylvania Common Law - Against All Defendants)**

104. All of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

105. Defendants received substantial monetary and material benefits from Plaintiff.

106. Defendants' retention of those benefits would be unjust under the circumstances.

   WHEREFORE, Plaintiff demands judgment against Defendants for all available and appropriate relief and remedies under the law.

**COUNT VIII**
**(Violation of the Unfair Trade Practices and Consumer Protection Law (UTPCPL) - Against All Defendants)**

107. All of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

108.  Defendants received substantial monetary and material benefits from Plaintiff using unfair trade practices and in violation of the consumer protection law.

WHEREFORE, Plaintiff demands judgment against Defendants for appropriate relief under the UTPCPL including treble and punitive damages, as well as any and all other available and appropriate remedies under the law.

## COUNT IX
## (Misdemeanor Theft by Fortune-Telling (18 Pa. C.S. § 7104) - Against All Defendants)

109.  All of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

110.  Defendants falsely lead Plaintiff to believe that Defendants were able to predict the future in terms of real-world events and individuals' actions

111.  Defendants falsely represented to Plaintiff that they could manipulate and influence real-world outcomes through the use of rituals, spells, charms, and incantations.

112.  Defendants falsely represented to Plaintiff their ability to reconcile Plaintiff with real-world individual J if Plaintiff provided Defendants with money and personal property.

WHEREFORE, Plaintiff demands judgment against Defendants for all available and appropriate relief and remedies under the law.

## COUNT X
## (Financial Exploitation of Older Adult (18 Pa. C.S. § 3922.1) - Against All Defendants)

113.  All of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

114. Plaintiff is an individual over 60 years old, properly classified for the purposes of this Count as an "older adult."

115. Defendants manipulated Plaintiff based on her age, among other factors, with the purpose of coercing Plaintiff into providing Defendants with unearned financial assets and personal property.

WHEREFORE, Plaintiff demands judgment against Defendants for all available and appropriate relief and remedies under the law.

## COUNT XI
### (Practicing Medicine Without a License (Pennsylvania Common Law) - Against All Defendants)

116. All of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

117. Defendants encouraged Plaintiff to take certain medications in order to perform rituals and spells.

118. Advising individuals to take medications without required medical licenses is a crime in the Commonwealth of Pennsylvania.

WHEREFORE, Plaintiff demands judgment against Defendants for all available and appropriate relief and remedies under the law.

## COUNT XII
### (Blackmail / Extortion (18 Pa. C.S. § 3923) - Against All Defendants)

119. All of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

120. Defendants required Plaintiff to send potentially compromising photos over the

internet to Defendants and threatened to release such photos if Plaintiff refused to send Defendants additional large sums of money and personal property.

121. Advising individuals to take medications without required medical licenses is a crime in the Commonwealth of Pennsylvania.

WHEREFORE, Plaintiff demands judgment against Defendants for all available and appropriate relief and remedies under the law.

Respectfully Submitted,

By: JAJ2397

Jared A. Jacobson, Esq.
PA Attorney ID: 201382
Jared Jacobson Law, LLC
223 Poplar Ave., Unit B
Devon, PA 19333
(917) 856-6167 / (215) 215-9991
jjacobson@jaredjacobsonlaw.com
*Counsel for Plaintiff, Ms. Carmela Ciotti-Hooper*

Dated: August 7, 2025

## <u>CERTIFICATE OF SERVICE</u>

I, Jared A. Jacobson, Esq., certify that I served Plaintiff's Complaint via the Court's ECF

system on August 7, 2025.

<u>By: JAJ2397</u>

Jared A. Jacobson, Esq.
PA Attorney ID: 201382
Jared Jacobson Law, LLC
223 Poplar Ave., Unit B
Devon, PA 19333
(917) 856-6167 / (215) 215-9991
jjacobson@jaredjacobsonlaw.com
*Counsel for Plaintiff, Ms. Carmela Ciotti-Hooper*

Dated: August 7, 2025